IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JEFFREY CHRISTIAN,
        Plaintiff,

v.                                                    Civil No. 3:20cv804 (DJN)

SERGEANT THOMAS, *et al.*,
        Defendants.

**MEMORANDUM OPINION**

Jeffrey Christian, a Virginia inmate, brings this 42 U.S.C. § 1983[1] action alleging that

Defendants[2] violated his Eighth[3] and Fourteenth[4] Amendment rights during his incarceration at

the Riverside Regional Jail ("RRJ"). This matter comes before the Court on Defendants' Motion

for Summary Judgment. (ECF No. 33.) Plaintiff has filed a Response. (("Pl.'s Resp.") (ECF

---

[1]    That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects,
> or causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an action
> at law . . . .

42 U.S.C. § 1983.

[2]    Defendants are Sergeant Jerome Thomas, Officer Carl Carbaugh, Lt. Ladeja Mason,
Investigator Charlene Jones, Officer Laura Reedy, and Superintendent Larry J. Leabeau.
(Compl. (ECF No. 1) at 1–4; Defs' Mem. in Supp. of Mot. for Summ. J. ("Defs' Mem.") (ECF
No. 34) at 1.)

[3]    "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual
punishments inflicted." U.S. Const. amend. VIII.

[4]    "No State shall . . . deprive any person of life, liberty, or property, without due process of
law . . . ." U.S. Const. amend. XIV, § 1.

No. 36).)  For the reasons set forth below, the Motion for Summary Judgment will be

GRANTED, and Plaintiff's claims will be DISMISSED.

## I.    RELEVANT ALLEGATIONS AND CLAIMS

Plaintiff's claims stem from an incident that purportedly occurred on July 17, 2020,

around 12:30 p.m., where he alleges that he was in his cell sleeping and:

> Defendant Thomas entered Plaintiff Christian's cell . . . and Defendant Thomas
> rubbed his hand down Plaintiff Christian's inner right thigh toward Plaintiff
> Christian's penis. When Plaintiff Christian woke up and realized what was going
> on, [he] started to come from under the covers, [and] Defendant Thomas then
> proceeded to grab three of my cups and a blanket, [and] ran out of the cell and shut
> the door.

(Compl. at 5.)[5]  Plaintiff then contends that, on July 18, 2020, he "requested to make a [Prison

Rape Elimination Act ("PREA")] call with Defendant Carbaugh," who "brought [Plaintiff] a

request form and the watch command, which was Defendant Mason, said [Plaintiff] had to

request it." (Compl. at 6.)  Later that day, Defendant Thomas refused to give him grievance

forms.  (Compl. at 6.)  Plaintiff states that he turned in more than one grievance on July 19, 2020,

"stating [he] fear[ed] for his safety," but that he did not hear anything back.  (Compl. at 6.)

Plaintiff also alleges that on July 19, 2020, he "tried to make a PREA call" and "it was redirected

to Riverside Regional Jail front desk."  (Compl. at 7.)[6]

On July 20, 2020, Plaintiff met with Defendant Jones who "had all of [Plaintiff's]

grievances" and was investigating his PREA complaint and explained to her what happened.

(Compl. at 7.)  Plaintiff wrote and signed his statement about the assault, but then allegedly did

---

[5]     The Court corrects the capitalization, spelling, and punctuation in the quotations from
Christian's submissions, and corrects the punctuation in the quotations from the Defendants'
submissions.  The Court employs the pagination assigned by the CM/ECF docketing system.

[6]     Christian indicates that a "Defendant Talley" helped him make a PREA call and took him
to his interview about the incident. (Compl. at 7.)  Christian did not name Talley in the caption
as a Defendant, and Christian later does not name him in any claim.  Therefore, the Court will
not consider Talley to be a defendant in this action.

not hear anything about the investigation. (Compl. at 7.)  On July 23, 2020, Plaintiff met with

mental health officials and informed them about the problems he experienced since the assault.

(Compl. at 7.)  In his Complaint, Plaintiff demands relief on the following grounds:

| | |
|---|---|
| Claim One: | "Defendant Thomas used excessive force against Plaintiff Christian by rubbing his hand down [Christian's] right thigh when Plaintiff Christian did not consent to being touched, was not violating any rules, and was not being disruptive." (Compl. at 8.) |
| Claim Two: | "Defendant Thomas violated Plaintiff Christian's rights under the PREA by the unnecessary and wanton touching of Plaintiff Christian." (Compl. at 8.) |
| Claim Three: | Defendants Carbaugh, Jones, Mason, Reedy, and Leabeau "violated Plaintiff Christian's rights under the Eighth Amendment . . . by encouraging the continuation of the misconduct by Defendant Thomas . . ." and failed to reasonably respond. (Compl. at 8-10.) |
| Claim Four: | Defendants Carbaugh, Mason, Reedy, and Leabeau "violated Plaintiff Christian's rights under the Prison Rape Elimination Act (PREA) by failing to reasonably respond." (Compl. at 8-9.) |
| Claim Five: | "Defendant Reedy restricted Plaintiff Christian's rights under the Fourteenth Amendment . . . by failing to provide him due process." (Compl. at 10.) |

Plaintiff seeks monetary damages. (Compl. at 12.)

## II.    STANDARD FOR SUMMARY JUDGMENT

The Court must grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a).  The party seeking summary judgment bears the responsibility of informing the

Court of the basis for the motion and identifying the parts of the record which demonstrate the

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

summary judgment motion may properly be made in reliance solely on the pleadings,

depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation

marks omitted). When the movant properly supports the motion, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

The relevant inquiry in a summary judgment analysis focuses on "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Id.* at 255. Moreover, the Court cannot weigh the evidence to enter a judgment, but simply must determine whether a genuine issue for trial exists. *Greater Balt. Ctr. for Pregnancy Concerns v. Mayor of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (quoting *Anderson*, 477 U.S. at 249).

Once the moving party properly submits and supports a motion for summary judgment, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; instead, there must be no genuine issue of material fact. *Anderson*, 477 U.S. at 247-48. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Indeed, the Court must grant summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the non-

4

moving party "must rely on more than conclusory allegations, 'mere speculation,' the 'building

of one inference upon another,' the 'mere existence of a scintilla of evidence,' or the appearance

of some 'metaphysical doubt' concerning a material fact." *Lewis v. City of Va. Beach Sheriff's

Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted).  A "genuine" issue

concerning a "material" fact only arises when the evidence, viewed in the light most favorable to

the non-moving party, allows a reasonable factfinder to return a verdict in that party's favor.

*Anderson*, 477 U.S. at 248.

In support of their Motion for Summary Judgment, Defendants have submitted:  (1) the

Declaration of Sergeant Thomas (("Thomas Decl.") (ECF No. 34-1)); (2) the Declaration of

Officer Carbaugh (("Carbaugh Decl.") (ECF No. 34-2)); (3) the Declaration of Lt. Jones (("Jones

Decl.") (ECF No. 34-3); (4) the Office of Professional Review Executive Summary of the

incident (("OPR Summary") (ECF No. 34-4)); (5) Plaintiff's Inmate Statement about the incident

dated July 23, 2020 (("Inmate Statement") (ECF No. 34-5)); (6) a Condensed Health Service

Encounter form for Plaintiff's mental health visit on July 27, 2020 (ECF No. 34-6); and, several

grievances filed by Plaintiff during the relevant time period (("Inmate Grievance Forms") (ECF

No. 34-7)).

At this stage, the Court must assess whether Plaintiff "has proffered sufficient proof, in

the form of *admissible* evidence, that could carry the burden of proof of his claim at trial."

*Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added).  Because

Plaintiff failed to swear to the contents of his Complaint under penalty of perjury, the Complaint

fails to constitute admissible evidence. *See United States v. White*, 366 F.3d 291, 300 (4th Cir.

2004) (noting that unsworn argument does not constitute evidence for consideration on summary

judgment).  Moreover, although Plaintiff responded to the Motion for Summary Judgment,

Plaintiff failed to submit an affidavit or any other evidence with his response.

Plaintiff's failure to present any admissible evidence to counter Defendants' Motion for Summary Judgment permits the Court to rely solely on Defendants' affidavits in deciding the Motion for Summary Judgment. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992))). Accordingly, the Court deems the following facts as established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Plaintiff.

## III. UNDISPUTED FACTS

### A. Sergeant Thomas Did Not Enter Plaintiff's Cell

In July of 2020, Defendant Thomas was regularly assigned to Housing Unit 2CC, a Restrictive Housing Unit ("RHU"). (Thomas Decl. ¶ 3.) Plaintiff was assigned to Cell 3 in Housing Unit 2CC. (Thomas Decl. ¶ 3.) RRJ maintains a policy that "correctional officers do not enter the cell of inmates housed in the [RHU] while occupied by an inmate. If it becomes necessary to enter an occupied cell, the inmate must first be removed and secured while an officer enters the cell." (Thomas Decl. ¶ 4.) Defendant Thomas follows this policy and has "not deviated from the policy." (Thomas Decl. ¶ 5.) Defendant Thomas avers that he had "not entered any cell in RHU while it was occupied by an inmate" and he "never entered Christian['s] cell while it was occupied, including throughout the month of July 2020." (Thomas Decl. ¶¶ 5–6.) Defendant Thomas avers that the incident that Plaintiff alleges "did not occur. [He has] never touched Christian or any other inmate in a sexual manner, including by rubbing the inner thigh. Prior to [Christian's] complaint, [he had] never been accused of any such conduct." (Thomas Decl. ¶ 8.)

6

On July 23, 2020, Defendant Jones interviewed Defendant Thomas about the alleged

incident. (Thomas Decl. ¶ 9.) Defendant Jones explained the nature of Plaintiff's allegations

against him and Defendant Thomas "repeatedly denied these allegations." (Thomas Decl. ¶ 9.)

**B.     Plaintiff's Attempts at Reporting and PREA Complaint Procedure**

During July of 2020, Defendant Carbaugh was periodically assigned to RRU Housing

Unit 2CC. (Carbaugh Decl. ¶ 3.) Defendant Carbaugh specifically recalls "an incident with

Christian in July 2020 involving a request to file a grievance against an officer." (Carbaugh

Decl. ¶ 5.) Defendant Carbaugh could not recall the exact time or date of the incident.

(Carbaugh Decl. ¶ 5.) Defendant Carbaugh explained that the incident occurred in the RHU and

that he "had been diverted to provide security to the RHU that evening. During this incident,

Plaintiff stated only that he wanted to file a grievance against another jail officer." (Carbaugh

Decl. ¶ 5.)

Pursuant to RRJ policy, an inmate may not file a grievance unless he has attempted to

resolve the issue on an informal basis. (Carbaugh Decl. ¶ 6.) Defendant Carbaugh explains that:

> Because there was no Sergeant on duty, I informed Lt. Mason, the acting Watch
> Commander, that Christian had requested a grievance form. Lt. Mason instructed
> me to tell Christian that he must first submit his complaint on an Informal Request
> Form detailing the issue he wishes to grieve. I relayed this information to Christian
> and had no further involvement in this matter.

(Carbaugh Decl. ¶ 6.) At the time, Defendant Carbaugh did not know that Plaintiff wished to file

a PREA complaint, and "the first time [he] learned that Christian was alleging that he was

inappropriately touched by Sgt. Jerome Thomas was when [he] read [Christian's] complaint that

was served with his lawsuit paperwork." (Carbaugh Decl. ¶ 7.)

Plaintiff had resources available to him to file a PREA complaint without the assistance

of or permission from a jail officer. (Carbaugh Decl. ¶ 8.) "Inmates confined in the RHU have

free access to a telephone in their quad [and] Christian could have dialed the PREA hotline."

7

(Carbaugh Decl. ¶ 8.)  Inmates "may also submit a PREA complaint utilizing electronic kiosks located in each housing unit." (Carbaugh Decl. ¶ 8.)  Additionally, during intake at RRJ, inmates "are oriented to PREA reporting procedures" and "[t]here are also conspicuous notices throughout the facility providing information on how to file a PREA complaint." (Carbaugh Decl. ¶ 9.)

Defendant Carbaugh notes that after reading Plaintiff's Complaint, it appears that Plaintiff used the grievance process to report his PREA complaint.  (Carbaugh Decl. ¶ 10.) Although Plaintiff used the incorrect procedure, the matter ultimately ended up with the correct department for investigating PREA complaints, the Office of Professional Responsibility ("OPR").  (Carbaugh Decl. ¶ 10.)  Defendant Carbaugh had no knowledge of the OPR investigation until he read Plaintiff's Complaint following service.  (Carbaugh Decl. ¶ 10.) Defendant Carbaugh explains that "[h]ad he understood that Christian desired to file a PREA complaint, . . . in accordance with [his] training," he would have "confidentially notified the Watch Commander, who at that time was Lt. Mason, and this matter would have been promptly investigated under RRJ policy." (Carbaugh Decl. ¶ 11.)

### C. Investigation into Alleged Incident

Defendant Jones serves as a Lieutenant at RRJ, whose duties include "ensur[ing] professional conduct of officers at RRJ and the safety and security of inmates and staff at RRJ," and reviewing and "investigation of PREA complaints submitted by inmates." (Jones Decl. ¶ 3.) On July 20, 2020, Plaintiff submitted a grievance indicating that he wished to file a PREA complaint against Defendant Thomas.  (Jones Decl. ¶ 5.)  Defendant Reedy, a Housing Office Specialist, received the grievance.  (Jones Decl. ¶ 5.)  However, because the substance of the grievance was a PREA complaint, Defendant Reedy did not log the grievance, but "she

8

confidentially forwarded the unlogged grievance to OPR for investigation in accordance with RRJ policy." (Jones Decl. ¶ 5.)

When Defendant Jones received the grievance, she opened an investigation. (Jones Decl. ¶ 6.) On July 23, 2020, Defendant Jones interviewed Plaintiff. (Jones Decl. ¶ 6.) Plaintiff "stated he was lying on his back with his knees to his chest when Sgt. Thomas entered Cell 3 and rubbed Christian's right thigh. Christian remembered it happened 'right after lunch.' He believed the incident occurred on July 18 or July 19, but he stated he could not remember the exact date." (Jones Decl. ¶ 6.) Plaintiff indicated that:

> [t]hereafter, Ofc. Carbaugh provided access to a phone so that he could call the PREA hotline. Christian stated that no one answered the PREA hotline and that the hotline rang without providing an opportunity to leave a message. Christian agreed to attempt a call to the PREA hotline using a phone in my office. [Defendant Jones] handed Christian the phone, and he dialed the PREA hotline: 804-504-7887. This is the same number that Christian stated he dialed without success. During this call, the hotline worked as intended. That is, the PREA hotline rang to a recorded line that provided an opportunity to leave a voice recorded PREA complaint.

(Jones Decl. ¶ 7.) Plaintiff completed a handwritten statement summarizing his recollection of the incident. (Jones Decl. ¶ 11; Inmate Statement at 1.) In his statement, Plaintiff clearly indicated that the incident occurred on July 18, 2020. (Inmates Statement at 1.)

On July 23, 2020, Defendant Jones also interviewed Defendant Thomas. (Jones Decl. ¶ 8.) After explaining Plaintiff's allegations to Defendant Thomas, Defendant Thomas "repeatedly denied that he entered Christian's cell," and "denied that he touched him inappropriately." (Jones Decl. ¶ 8.) Defendant Thomas explained that, pursuant to RRJ policy, "corrections officers in the [RHU] are prohibited from entering a cell occupied by an inmate" and that "if he enters an inmate's cell, he only does so when the inmate is not present." (Jones Decl. ¶ 8.)

9

After Defendant Jones interviewed both Plaintiff and Defendant Thomas, she "reviewed rapid eye footage of the dates that Christian allege[d] the incident occurred, July 18 [or] July 19, between 10:30 a.m. and 1:30 p.m. The rapid eye footage reflected that no corrections officer, including Sgt. Jerome Thomas, entered Cell 3 in Housing Unit 2CC during the times alleged by Christian." (Jones Decl. ¶ 9.)[7] Therefore, Defendant Jones "was unable to corroborate Christian's allegations." (Jones Decl. ¶ 9.)

On August 1 and 16, 2020, Plaintiff filed two grievances potentially related to his PREA complaint, and Defendant Reedy responded to both. (Inmate Grievance Forms.) In the August 1, 2020 grievance, Plaintiff complained that he had not received responses to any of his grievances. (Inmate Grievance Forms at 5.) Defendant Reedy responded to the grievance that, "[a]ll of your grievances in reference to Sgt. Thomas have been forwarded to OPR." (Inmate Grievance Forms at 5-6.) In his August 16, 2020 grievance, Plaintiff stated that he had "request[ed] to speak to OPR and have yet got [sic] a chance to speak with them. I have a matter that is urgent to talk to them about." (Inmate Grievance Forms at 9.) Defendant Reedy responded that "OPR reported to [her] that they have spoken to you. This is not grievable." (Inmate Grievance Forms at 10.)

On September 25, 2020, Defendant Jones drafted a report summarizing her investigation, providing her findings, and concluding that Plaintiff's allegations lacked merit. (ECF No. Jones Decl. ¶ 10.) The report concluded her investigation. (Jones Decl. ¶ 10.) It remains unclear whether Plaintiff received a copy of that report before he filed his Complaint.

---

[7]    RRJ did not retain the rapid eye footage and "it has since been overwritten in accordance with the facilities' retention policy." (Jones Decl. ¶ 12.) The Court notes that overwriting video footage as a matter of course is a questionable policy when an inmate has clearly lodged a complaint that might lead to litigation.

# IV.   ANALYSIS

## A.   No Personal Involvement of Defendant Leabeau

As a matter of law, to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege

that a person acting under color of state law deprived him or her of a constitutional right or of a

right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in*

*Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). "Government

officials may not be held liable for the unconstitutional conduct of their subordinates under a

theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citations omitted).

To state a legally sufficient claim for an alleged violation of a federal constitutional right, "[a]

plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution." *Id.* Accordingly, the plaintiff must allege

facts that affirmatively show "that the official charged acted personally in the deprivation of the

plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation

marks omitted); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is

"personal, based upon each defendant's own constitutional violations").

Plaintiff fails to allege facts or provide any evidence indicating that Defendant Leabeau

acted personally in the deprivation of Plaintiff's constitutional rights. Indeed, Plaintiff fails to

even name Defendant Leabeau in the statement of the factual basis for his claims. To the extent

that the Court could infer that Plaintiff intends to impose liability on Defendant Leabeau solely

because he serves as the Superintendent at RRJ and based entirely on *respondeat superior*, he

11

fails to state a claim for relief. *Iqbal*, 556 U.S. at 676.[8]  Accordingly, any claim against

Defendant Leabeau will be DISMISSED.[9]

## B.      PREA Claims (Claims Two and Four)

In Claims Two and Four, Plaintiff faults Defendants for violating his rights under the

PREA.  However, as discussed below, as a matter of law, the PREA does not create a right of

action that an individual civil litigant may enforce under § 1983.

"Section 1983 . . . is not an independent source of substantive rights, but simply a vehicle

for vindicating preexisting constitutional and statutory rights." *Safar v. Tingle*, 859 F.3d 241,

245 (4th Cir. 2017) (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)).  Accordingly, in

any action under § 1983, the Court must begin its analysis by identifying the precise

constitutional or statutory violation that the defendant allegedly committed. *See id.* ("The first

step in any such claim is to pinpoint the specific right that has been infringed." (citing *Baker v.

McCollan*, 443 U.S. 137, 140 (1979))).  "[W]here the text and structure of a statute provide no

indication that Congress intends to create new individual rights, there is no basis for a private

---

[8]      To allege a claim that a supervising officer failed to fulfill his duties to protect an inmate
by ensuring that his subordinates act within the law, the inmate must show that:

> (1) that the supervisor had actual or constructive knowledge that his subordinate
> was engaged in conduct that posed a pervasive and unreasonable risk of
> constitutional injury to citizens like the plaintiff; (2) that the supervisor's response
> to that knowledge was so inadequate as to show deliberate indifference to or tacit
> authorization of the alleged offensive practices; and (3) that there was an
> affirmative causal link between the supervisor's inaction and the particular
> constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted) (citations
omitted).  Christian fails to allege facts that support any one of these three factors.

[9]      As explained in Part IV.B, to the extent that Christian alleges that Defendant Leabeau
personally deprived him any rights under the PREA, he again fails to state a claim for relief.

suit, whether under § 1983 or under an implied right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002).

"Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act." *De'lonta v. Clarke*, 2013 WL 209489, at *3 (W.D. Va. Jan. 14, 2013) (citation omitted). Rather, "[t]he PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. . . . The statute does not grant prisoners any specific rights." *Id.* (quoting *Chinnici v. Edwards*, 2008 WL 3851294, at *3 (D. Vt. Aug. 13, 2008)). Accordingly, Plaintiff fails to demonstrate any entitlement to relief based on an alleged violation of the PREA. *See Hill v. Hickman Cnty Jail*, 2015 WL 5009301, at *3 (M.D. Tenn. August 21, 2015) (collecting cases and holding that "[t]o the extent the complaint might be construed as bringing a claim under the PREA, such claim must be dismissed"); *Byrd v. South Carolina Dep't of Corr.*, 2013 WL 5309759, at *11 (D.S.C. Sept. 19, 2013) ("Because § 1983 itself does [not] create any rights, and the text and the structure of the PREA provide no indication that Congress intended to create new individual rights, there is no basis for a private right of action for inmates to sue prison officials for noncompliance with the Act." (footnote and citations omitted)). Because Plaintiff's claims under the PREA are legally frivolous, Claims Two and Three will be DISMISSED.

### C.    Fourteenth Amendment Claims (Claims One and Three)

In Plaintiff's submissions, he does not clearly indicate whether he was a convicted felon at the time of the incident or a pre-trial detainee. Because he was ultimately transferred into the custody of the Virginia Department of Corrections, the Court assumes that Plaintiff was a pre-trial detainee at the time. Courts must evaluate claims of excessive force[10] against a pretrial

---

[10]    It is not entirely clear whether an allegation of sexual assault by a jail official against a pretrial detainee should be analyzed as an unlawful condition of confinement or as excessive force. *See Brown v. Flowers*, 974 F.3d 1178, 1182-83 (10th Cir. 2020) ("treat[ing] sexual abuse

13

detainee under the Due Process Clause of the Fourteenth Amendment. *See Goodman v. Barber*, 539 F. App'x 87, 89 (4th Cir. 2013) (citing cases for the proposition that "excessive force claims of a pretrial detainee or arrestee are governed by the Due Process Clause of the Fourteenth Amendment"). Under the Fourteenth Amendment standard, a plaintiff must show that the defendant "inflicted unnecessary and wanton pain and suffering upon the detainee." *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006) (citations omitted) (internal quotation marks omitted), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010). A detainee may prevail by "providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (citations omitted).[11] Factors that a court may consider to determine whether force was objectively unreasonable may include

> the relationship between the need for the use of force and the amount of force used; the extent of [the detainee's] injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the [detainee] was actively resisting.

*Id.* at 397 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

---

of prisoners as a species of excessive-force claim" (citation omitted)). *But see E.D. v. Sharkey*, 928 F.3d 299, 307 (3rd Cir. 2019) (examining allegations of sexual assault as a conditions of confinement claim). Christian brings his claim of alleged sexual assault as one of excessive force, instead of as an unlawful condition of confinement. The Court need not flesh out which aspect of the Fourteenth Amendment more appropriately applies here, because Christian has presented no evidence that Defendant Thomas touched him inappropriately. Therefore, Christian fails to demonstrate that Defendant Thomas violated his Fourteenth Amendment rights under either standard.

[11]     In *Kingsley*, the Supreme Court determined that the appropriate standard for the Fourteenth Amendment is "only that the officers' use of that force was *objectively* unreasonable," not that "the officers were *subjectively* aware that their use of force was unreasonable . . . ." 576 U.S. at 390.

### 1.   Claim One

In Claim One, Plaintiff contends that: "Defendant Thomas used excessive force against Plaintiff Christian by rubbing his hand down [Christian's] right thigh when Plaintiff Christian did not consent to being touched, was not violating any rules, and was not being disruptive." (Compl. at 8.)  However, Plaintiff has only presented his own unsworn allegations, which do not constitute admissible evidence sufficient to defeat summary judgment. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004) (noting that unsworn argument does not constitute evidence for consideration on summary judgment). Thus, contrary to Plaintiff's suggestion, the uncontroverted evidence before the Court establishes that Defendant Thomas did not enter Plaintiff's cell and did not touch Plaintiff.

The Court notes that, despite reporting to prison officials investigating Plaintiff's complaint that the alleged incident occurred on July 18 or 19, Plaintiff alleges in his Complaint — for the first time — that the incident may have occurred on July 17.  (Compl. at 5.)  However, no matter the date, the uncontroverted evidence again establishes that Defendant Thomas did not enter Plaintiff's cell and did not touch Plaintiff.  Indeed, Defendant Thomas avers that RRJ policy prohibits corrections officers from entering into a RHU inmate's cell while the inmate occupies the cell, he always follows that policy, and he did not enter the cell while Plaintiff occupied it.  (Thomas Decl. ¶¶ 5-8.)  Because Plaintiff fails to establish that Defendant Thomas touched him, much less inappropriately touched him, Plaintiff fails to demonstrate that Defendant Thomas violated his Fourteenth Amendment rights.  Accordingly, Claim One will be DISMISSED.

### 2.   Claim Three

In Claim Three, Plaintiff contends that Defendants Carbaugh, Jones, Mason, and Reedy "violated Plaintiff Christian's rights under the Eighth Amendment . . . by encouraging the

continuation of the misconduct by Defendant Thomas . . ." and failed to reasonably respond. (Compl. at 8-10.)  Clearly, none of these Defendants were involved in the alleged excessive force; therefore, the Court fails to discern what constitutional violation that Plaintiff alleges here. At most, the Court believes that Plaintiff argues that they failed to reasonably respond to the alleged assault, an allegation completely belied by the record.

"Due process requires that a pretrial detainee not be punished." *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *see Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (noting that "the pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to any form of punishment").  However, "not every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Martin*, 849 F.2d at 870 (citation omitted). The relevant precedent teaches that "punishment, whether for a convicted inmate or a pretrial detainee, is the product of intentional action, or intentional inaction, respecting known and *substantial* risks of harm." *Westmoreland v. Brown*, 883 F. Supp. 67, 72 (E.D. Va. 1995) (emphasis omitted) (citing *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994)).  "The issue of constitutional import presented in this action is when the risk of harm becomes so substantial that 'deliberate indifference' to it, . . . is the legal equivalent of inflicting 'punishment.'" *Id.* at 74. Thus, "[t]o successfully assert a claim of punishment without due process under the Fourteenth Amendment, an inmate must assert not only that the defendant[ ] w[as] deliberately indifferent to the substantial risk of harm posed by [the challenged condition], but also that this deliberate indifference caused a physical or emotional injury." *Id.*

Contrary to Plaintiff's suggestion, Defendants Carbaugh, Jones, Mason, and Reedy all responded reasonably to Plaintiff and did not act with deliberate indifference to his complaints.

16

### a.     Defendants Carbaugh and Mason

First, with respect to Defendants Carbaugh and Mason, Plaintiff has failed to demonstrate that either defendant actually knew of and disregarded a substantial risk of serious harm to Plaintiff's person. *See Farmer*, 511 U.S. at 837 (adopting subjective test for deliberate indifference for prison officials). As a preliminary matter, Plaintiff did not need an officer to file his PREA complaint. Plaintiff could have simply used the phone in his unit or the computer kiosk to lodge such a complaint. (Carbaugh Decl. ¶ 8.) Thus, it is unclear why Plaintiff believes that either Defendant Carbaugh or Mason somehow violated his constitutional rights with respect to his PREA complaints.

Moreover, Defendant Carbaugh avers that he was not aware that Plaintiff desired to file a PREA complaint. Defendant Carbaugh remembered Plaintiff asking him for a grievance form during a day in July and Plaintiff stating that he wanted to file a grievance against an officer. Defendant Carbaugh consulted with Defendant Mason, who served as Watch Commander, and Defendant Mason informed Defendant Carbaugh that Plaintiff needed to file an informal complaint first. Defendant Carbaugh relayed that information to Plaintiff. (Carbaugh Decl. ¶¶ 5-7.) The uncontroverted record establishes that neither Defendant Carbaugh nor Defendant Mason knew that Plaintiff desired to file a PREA complaint and, therefore, they did not act deliberately indifferent to a serious risk of harm to Plaintiff. Thus, Plaintiff fails to satisfy the Fourteenth Amendment. Claim Three lacks merit with respect to Defendants Carbaugh and Mason.

### b.     Defendants Reedy and Jones

Second, with respect to Defendant Reedy and Jones, Plaintiff fails to demonstrate that either defendant acted deliberately indifferent to a serious risk of harm to his person. Although

Defendant Reedy and Jones became aware of Plaintiff's PREA complaint, both reasonably responded to it.

An inmate may establish a prison administrator's liability under § 1983 for a grievance or letter, if he alleges facts that indicate "that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer*, 511 U.S. at 837). Thus, Plaintiff must allege that Defendant Reedy "knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id.* at 994 (citing *Gentry v. Duckworth*, 65 F .3d 555, 561 (7th Cir. 1995)). Defendant Reedy received Plaintiff's improperly filed PREA complaint through the grievance system. Although Plaintiff did not report a violation in the proper manner, Defendant Reedy nevertheless recognized it as a PREA complaint and forwarded it to Defendant Jones in OPR, the proper investigating body. (Jones Decl. ¶ 5.) Moreover, contrary to Plaintiff's suggestion, Defendant Reedy clearly responded to Plaintiff's August 1 and 16, 2020 grievances inquiring about his PREA complaint and noted that she had forwarded his grievances to OPR and that Plaintiff had actually spoken to OPR already.[12] (Inmate Grievance Forms at 5-10.) In sum, Plaintiff fails to establish that Defendant Reedy turned a blind eye to or failed to remedy the alleged constitutional violation committed by Defendant Thomas. Therefore, Plaintiff fails to demonstrate that Defendant Reedy acted with deliberate indifference to a serious risk of harm to Plaintiff.

---

[12]     For the first time in his Response, Christian concedes that he had already spoken with OPR, but that in his grievance he meant that he wanted to speak to them again. (ECF No. 36, at 1.) A fair reading of Christian's grievance stating that he, "request[ed] to speak to OPR and have yet got [sic] a chance to speak with them" (Inmate Grievance Forms at 9), would not have placed Defendant Reedy on notice that he had already spoken to OPR but was asking to speak to OPR *again*.

It remains less clear what Plaintiff intends to allege against Defendant Jones. Upon receipt of the PREA complaint from Defendant Reedy, Defendant Jones promptly opened an investigation into the PREA complaint, and within a few days had interviewed both Plaintiff and Defendant Thomas and reviewed camera footage from the days that Plaintiff identified that the incident could have happened. (Jones Decl. ¶¶ 6, 8–9)  When Plaintiff expressed that he had trouble connecting to the PREA hotline in his housing unit, Defendant Jones allowed him to use the phone in her office to call the hotline to report the incident and Plaintiff had no problem getting through. (Jones Decl. ¶ 7.)  Finally, after completing her investigation, Defendant Jones found Plaintiff's complaint unfounded. (Jones Decl. ¶ 10.)

Plaintiff now faults Defendant Jones for not reviewing the footage from July 17, as well as from July 18 and July 19, 2020. (Pl.'s Resp. at 2-3.)  However, Defendant Jones reviewed the footage from the days that Plaintiff specifically identified in his PREA complaint and in his statement as the days that the incident could have occurred.  Plaintiff now suggests that, because he told mental health officials during their weekly rounds that the incident occurred on July 17, 2020, "they had knowledge it could [have] happened" that day and "they fail[ed] to put in the investigation." (Pl.'s Resp. at 3.)  Plaintiff fails to identify to whom "they" refers.  Contrary to Plaintiff's suggestion, the record does not reflect that Defendant Jones had Plaintiff's record from his weekly mental health visit available to her for her investigation or that she knew that the incident could have occurred on July 17.  Nor does Plaintiff suggest that when he realized that the incident may have occurred on July 17, instead of July 18 or 19, that he notified Defendant Jones of this fact.  Defendant Jones cannot be faulted for reviewing video footage only for the

19

days and times that Plaintiff expressly identified to her as the days that the incident could have occurred.[13]

In sum, although Plaintiff suggests that Defendants Reedy and Jones "failed to reasonably respond" to his allegations, the record establishes that both Defendants, in fact, responded reasonably. Plaintiff fails to demonstrate that either Defendants Reedy or Jones acted deliberately indifferent to a serious risk of harm to his person. Accordingly, Claim Three lacks merit and will be DISMISSED with respect to all Defendants.

### C.      Due Process Claims With Respect to Grievances

In Claim Five, Plaintiff contends that "Defendant Reedy restricted Plaintiff Christian's rights under the Fourteenth Amendment . . . by failing to provide him due process." (Compl. at 10.) Although Plaintiff fails to identify with any specificity how Defendant Reedy violated his due process rights, the Court infers that Plaintiff believes that Defendant Reedy failed to respond to his grievances in a manner that Plaintiff desired.

First, "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017); *see also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Because Plaintiff enjoys no constitutional right to participate in grievance proceedings, his allegation that Defendant Reedy improperly responded to his grievance is legally frivolous. *See Banks v. Nagle*, 2009 WL 1209031, at *3 (E.D. Va. May 1, 2009) (dismissing inmate's claims

---

[13]     The Court notes that Christian's recitation of dates is inaccurate to the point of nearly being discrediting or at the very least shows a lack of care on Christian's behalf. Not only does Christian claim that he does not know the exact date that he was allegedly assaulted, which on its face is hardly believable, but in his Complaint, he claims that he met with Officer Jones on July 20, when it fact he met with her on July 23, and he indicates that he met with mental health on July 23, when in fact he had the appointment on July 27.

for failure to process grievances as legally frivolous); *see also DePaola v. Ray*, 2013 WL4451236, at *8 (W.D. Va. July 22, 2013) (citation omitted) (observing that "a supervisor's after–the–fact denial of a grievance falls short of establishing § 1983 liability"). Indeed, simply "[r]uling against a prisoner does not cause or contribute to the [constitutional] violation." *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007); *cf. Chamberlain v. Clarke*, 2014 WL 2154183, at *3 (W.D. Va. May 22, 2014) (noting that an inmate's "dissatisfaction with [a prison official's] responses to his grievances is a non–starter").

Second, the record belies Plaintiff's contention that no one responded to his grievances. As discussed before, Defendant Reedy appropriately recognized Plaintiff's first informal complaint as a PREA complaint and forwarded it to the OPR for investigation. Defendant Reedy also responded to Plaintiff's grievances within a matter of days. Plaintiff complains that no one logged his grievances; however, any grievance related to his PREA complaint would not have been logged, because a grievance was not the manner in which to report such a complaint. Instead, these grievances were forwarded to OPR. Therefore, the Court fails to discern, and Plaintiff fails to demonstrate, that Defendant Reedy violated his due process rights. Accordingly, Claim Five lacks merit and will be DISMISSED.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 33) will be GRANTED.  Plaintiff's claims and the action will be DISMISSED.

An appropriate Order shall issue.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Plaintiff and counsel of record.

                                              /s/

                                    David J. Novak
                                    United States District Judge

Richmond, Virginia
Dated:  May 2, 2022